Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE COLOMBERTI,<br><br>Plaintiff,<br><br>v.<br><br>COVANTA HOLDING CORPORATION, SAMUEL ZELL, DAVID M. BARSE, RONALD J. BROGLIO, PETER C. B. BYNOE, LINDA J. FISHER, JOSEPH HOLSTEN, OWEN MICHAELSON, DANIELLE PLETKA, MICHAEL W. RANGER, ROBERT S. SILBERMAN, and JEAN SMITH,<br><br>Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Catherine Colomberti ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

1

## NATURE OF THE ACTION

1. This is an action against Covanta Holding Corporation ("Covanta" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Covanta by Covert Intermediate, Inc. ("Parent"). Parent is an indirect wholly owned subsidiary of funds affiliated with EQT Infrastructure ("EQT").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

# PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Covanta common stock.

7. Defendant Covanta, through its subsidiaries, provides waste and energy services to municipal entities primarily in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "CVA."

8. Defendant Samuel Zell ("Zell") is Chairman of the Board of the Company.

9. Defendant David M. Barse ("Barse") is a director of the Company.

10. Defendant Ronald J. Broglio ("Broglio") is a director of the Company.

11. Defendant Peter C. B. Bynoe ("Bynoe") is a director of the Company.

12. Defendant Linda J. Fisher ("Fisher") is a director of the Company.

13. Defendant Joseph Holsten ("Holsten") is a director of the Company.

14. Defendant Owen Michaelson ("Michaelson") is a director of the Company.

15. Defendant Danielle Pletka ("Pletka") is a director of the Company.

16. Defendant Michael W. Ranger ("Ranger") is President, Chief Executive Officer, and a director of the Company.

17. Defendant Robert S. Silberman ("Silberman") is a director of the Company.

18. Defendant Jean Smith ("Smith") is a director of the Company.

19. Defendants Zell, Barse, Broglio, Bynoe, Fisher, Holsten, Michaelson, Pletka, Ranger, Silberman, and Smith are collectively referred to herein as the "Individual Defendants."

20. Defendants Covanta and the Individual Defendants are collectively referred to herein as the "Defendants."

# SUBSTANTIVE ALLEGATIONS

## A. The Proposed Transaction

21. On July 14, 2021, Covanta announced that it had entered into a definitive agreement with EQT whereby EQT would acquire all shares of Covanta common stock for $20.25 per share. The press release announcing the Proposed Transaction states, in pertinent part:

**EQT Infrastructure to acquire Covanta Holding Corporation, a global leader in Waste-to-Energy solutions, for $20.25 per share**

NEWS PROVIDED BY
**Covanta Holding Corporation**
Jul 14, 2021, 08:00 ET

MORRISTOWN, N.J., July 14, 2021 /PRNewswire/ -- Covanta Holding Corporation (NYSE: CVA), a world leader in sustainable waste and energy solutions, today announced that it has entered into a definitive agreement with EQT Infrastructure ("EQT"), whereby EQT will acquire all shares of Covanta common stock for $20.25 per share. The purchase price represents an approximately 37% premium to Covanta's unaffected share price of $14.78 on June 8th, the day prior to initial media speculation of a transaction. The acquisition is subject to Covanta shareholder approval, as well as customary government approvals, and is expected to close in the fourth quarter of this year. The agreement resulted from a competitive sale process and is not subject to a financing condition.

\*    \*    \*

Covanta is the world's leading waste-to-energy provider, operating facilities in North America, Europe and the UK. Annually, Covanta's 40 plus facilities process approximately 21 million tons of waste from municipalities and businesses and convert it into renewable electricity to power over one million homes.

Following the completion of the acquisition, EQT will work with Covanta's management team to build upon its impressive strengths including its portfolio of assets that provide essential waste services to municipalities and commercial customers, its long-term community relationships, as well as its numerous growth opportunities, including through a robust UK project pipeline of new waste-to-energy infrastructure and Covanta's Environmental Solutions platform. Covanta will maintain its corporate headquarters in Morristown, New Jersey and its management team is expected to remain in place.

\*    \*    \*

BofA Securities acted as financial advisor to Covanta and Debevoise & Plimpton LLP provided legal counsel.

**About Covanta**

Covanta is a world leader in providing sustainable waste and energy solutions. Annually, Covanta's modern Waste-to-Energy ("WtE") facilities safely convert approximately 21 million tons of waste from municipalities and businesses into clean, renewable electricity to power one million homes and recycle 600,000 tons of metal. Through a vast network of treatment and recycling facilities, Covanta also provides comprehensive industrial material management services to companies seeking solutions to some of today's most complex environmental challenges. For more information, visit www.covanta.com.

**About EQT**

EQT is a purpose-driven global investment organization with more than EUR 67 billion in assets under management across 26 active funds. EQT funds have portfolio companies in Europe, Asia-Pacific and the Americas with total sales of approximately EUR 29 billion and more than 175,000 employees. EQT works with portfolio companies to achieve sustainable growth, operational excellence and market leadership.

22. On August 19, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

23. The Proxy Statement, which recommends that Covanta shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Covanta's financial projections; and (ii) the financial analyses performed by Covanta's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion.

24. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board; (ii) Reasons for Recommending the Adoption of the Merger Agreement; (iii) Forward-Looking Financial Information; and (iv) Opinion of BofA Securities, Inc.

5

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Covanta shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Covanta's Financial Projections**

26. The Proxy Statement omits material information concerning Covanta's financial projections.

27. With respect to the "Financial Projections," the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Revenue, (ii) Adjusted EBITDA, (iii) Free Cash Flow, (iv) North American Unlevered Free Cash Flows, and (v) European Levered Free Cash Flows; (2) Covanta's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC

Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning BofA's Analyses

31. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by BofA.

32. With respect to BofA's "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction BofA observed in its analyses.

33. The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) all line items underlying the Company's levered and unlevered free cash flow projections; (2) the terminal values for the Company; (3) the individual inputs and assumptions underlying the (i) range of assumed perpetuity growth rates of 1.5% to 2.5% and of 2%, and (ii) discount rates ranging from 6.25% to 7.25% and from 9.50% to 12.50%;

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 27, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

(4) the Company's projected net debt as of June 30, 2021; and (5) the number of fully-diluted shares of Company common stock outstanding as of April 23, 2021.

34. The Proxy Statement fails to disclose the following concerning BofA's "*Wall Street Analysts Price Targets*" analysis: (1) individual price targets observed by BofA in its analysis; and (2) the sources thereof.

35. With respect to BofA's "*Leveraged Buyout Analysis*," the Proxy Statement fails to disclose (i) the individual inputs and assumptions underlying the LTM terminal EBITDA multiple range of 8.0x to 10.0x, and (ii) a target range of annualized internal rates of return for the financial sponsor of 14.0% to 16.0%.

36. The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Covanta shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Covanta shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of

the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

39. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

40. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 27, 2021                     Respectfully submitted,

**HALPER SADEH LLP**

By: <u>/s/ Daniel Sadeh</u>
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*